1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LARRY GIRALDES, JR.,                      No.  2:14-cv-1780 CKD P

12              Plaintiff,

13        v.                                   ORDER

14   JEFFREY BEARD,

15              Defendant.

16

17   I.  Introduction

18          Plaintiff is a California prisoner proceeding through counsel in this civil rights action

19   pursuant to 42 U.S.C. § 1983.  In his July 28, 2014 complaint, plaintiff seeks to permanently

20   enjoin the California Department of Corrections and Rehabilitation ("CDCR") from enforcing

21   Title 15 Cal. Code Regs. § 3177(b)(2), which prohibits conjugal visits for certain classes of

22   inmates, including those sentenced to life who have not yet received a parole date.  Plaintiff, who

23   married in 2013, claims this policy violates his right to practice his Catholic religion, which

24   requires marriages to be consummated.  He brings claims under the First Amendment and the

25   Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).  (ECF No. 1

26   ("Compl.").)

27          The undersigned found that service was appropriate for (former) CDCR Secretary Jeffrey

28   Beard.  (ECF No. 9.)  On November 6, 2014, defendant answered the complaint.  (ECF No. 13.)

1   On March 11, 2015, plaintiff's motion to appoint counsel was granted.  (ECF No. 18.)

2         Before the court is plaintiff's April 4, 2016 motion for preliminary injunction, seeking an

3   order barring CDCR from enforcing § 3177(b)(2) against him to bar overnight visits with his wife

4   pending the resolution of the merits of this case.  (ECF No. 45 ("Mot.").)  Defendant has filed an

5   opposition (ECF No. 50), and plaintiff has filed a reply (ECF No. 51).  Following a July 6, 2016

6   hearing on the motion in which attorney Alan Reinach appeared for plaintiff and Deputy Attorney

7   General Arthur Mark appeared for defendant, the motion was submitted.  (ECF No. 52.)  Both

8   parties have consented to magistrate judge jurisdiction to conduct all proceedings in this matter.

9   (ECF Nos. 3 & 12.)

10  II.  Legal Standard for Preliminary Injunction

11        The legal principles applicable to a request for injunctive relief are well established.  To

12  prevail, the moving party must show either a likelihood of success on the merits and the

13  possibility of irreparable injury, or that serious questions are raised and the balance of hardships

14  tips sharply in the movant's favor.  See Coalition for Economic Equity v. Wilson, 122 F.3d 692,

15  700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th

16  Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point

17  being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under any

18  formulation of the test, plaintiff must demonstrate that there exists a significant threat of

19  irreparable injury."  Id.  In the absence of a significant showing of possible irreparable harm, the

20  court need not reach the issue of likelihood of success on the merits.  Id.

21  III.  Facts

22        Since 1993, plaintiff has been serving a life sentence with the possibility of parole for his

23  conviction for multiple felony offenses, including two counts of first degree murder.  A Level IV

24  maximum-security prisoner at California State Prison-Sacramento, plaintiff has not been given a

25  parole date and has a minimum release date of March 21, 2039.[1]  His custody status is Medium A.

26        Plaintiff is an observant Roman Catholic.  In October 2013, he legally married his

27  ────────────────

28  [1] Plaintiff's minimum release date is the earliest he could be considered by the Board of Parole Hearings for parole.  Cal. Pen. Code § 3041(a).

childhood friend, Cheree Giraldes, in prison.  Plaintiff's application for a family overnight visit with his wife was denied.  To date, plaintiff and his wife have not been able to consummate the marriage or spend time alone together in a private setting.

Section 3177(b) provides that family visiting is a "privilege" that "shall be restricted as necessary" to maintain prison order and security.  Inmates may lose family visiting privileges based on documented misconduct.  Family visiting is not permitted for certain types of inmates, including those "convicted of a violent offense involving a minor or family member or any sex offense."  Section 3177(b)(2) provides:

> Family visits shall not be permitted for inmates who are in any of the following categories: sentenced to life without the possibility of parole; sentenced to life, without a parole date established by the Board of Parole Hearings; designated Close A or Close B custody; designated a condemned inmate; assigned to a reception center; assigned to an administrative segregation unit; assigned to a security housing unit; designated "C" status; guilty of one or more Division A or Division B offense(s) within the last 12 months; or guilty of narcotics distribution while incarcerated in a state prison.

(Emphasis added.)  Plaintiff is categorically denied family visits per both of the underlined provisions: a life sentence without a parole date and, alternatively, a disciplinary conviction for distributing narcotics in prison.

IV.  Legal Standards for Plaintiff's Claims

A.  Free Exercise

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests.  See Shakur v. Schriro, 514 F.3d 878, 883–84 (9th Cir. 2008).  A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause.  Id. at 884–85.  Rather, the sincerity test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies.  Id.  The prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns.  Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in Shakur, 514 F.3d at 884).

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Turner sets forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates";
>
> (3) Whether "accommodation of the asserted constitutional right" will impact "guards and other inmates, and the allocation of prison resources generally"; and
>
> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

Turner, 482 U.S. at 89–90.

B. RLUIPA

RLUIPA prohibits prison officials from substantially burdening a prisoner's "'religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means.'" Alvarez v. Hill, 518 F.3d 1152, 1156 (9th Cir. 2009) (quoting Warsoldier v. Woodford, 418 F.3d 989, 997–98 (9th Cir. 2005)). RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under Turner." Shakur v. Schriro, 514 F.3d 878, 888 (9th Cir. 2008).

To prevail under RLUIPA, plaintiff must demonstrate (1) a sincerely held religious belief, (2) that this belief has been substantially burdened, and (3) that the governmental restriction on his religion is not the least restrictive means of achieving a governmental compelling interest. Holt v. Hobbs, 135 S. Ct. 853, 857 (2015); see 42 U.S.C.A. § 2000cc-1(a)(1)-(2). "A 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." Warsoldier, 418 F.3d at 995.

In Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2780 (2014), the Supreme Court observed that "[t]he least-restrictive-means standard is exceptionally demanding" and held that

4

1    that standard was not satisfied where the government "has not shown that it lacks other means of

2    achieving its desired goal without imposing a substantial burden on the exercise of religion[.]"

3    Id.  In Holt, 135 S. Ct. 853, the Supreme Court held that an Arkansas prison grooming policy

4    "violates RLUIPA insofar as it prevents [a Muslim prisoner] from growing a ½–inch beard in

5    accordance with his religious beliefs" because the grooming policy was not the least restrictive

6    means of furthering the prison's interest in security.

7    V.  Parties' Arguments

8         Plaintiff argues that CDCR's denial of conjugal visits imposes a substantial burden on

9    plaintiff's exercise of his Catholic faith, as his marriage is both a civil legal relationship and a

10   Catholic religious sacrament.  (Mot. at 12-15.)  Even if § 3177(b)(2) furthers a compelling state

11   interest in safety and security, he argues, RLUIPA requires an "individualized assessment," not a

12   "blanket policy" that includes otherwise non-dangerous life inmates who lack a parole date.  (Id.

13   at 16.)  Plaintiff contends that "CDCR must present evidence that its categorical prohibition on

14   family visits is the least restrictive alternative to accomplish [its] compelling interest in regards to

15   Mr. Giraldes."  (Id. at 18.)

16        Defendant disputes that § 3177(b)(2) substantially burdens plaintiff's exercise of religious

17   faith.  Defendant asserts that plaintiff has not shown a sincerely held religious belief, as he and his

18   wife were married by a non-Catholic officiant and both were previously divorced and did not

19   obtain church-sanctioned annulments prior to remarriage.  (ECF No. 50 at 14, 16-17, citing ECF

20   No. 45-2, Ex. A (marriage certificate); see also ECF No. 46-2, Sims Decl.)  At the hearing on the

21   motion, plaintiff's counsel averred that, while plaintiff was "not particularly knowledgeable about

22   the specifics of Catholic doctrine," plaintiff considers his marriage a Catholic one and is sincere

23   in his religious faith.

24        Defendant next argues that plaintiff's religious beliefs are irrelevant to the reasons he is

25   not allowed to have conjugal visits.  Rather, he is disqualified under § 3177(b) due to both his

26   lack of a parole date and history of misconduct in prison.  Plaintiff has a classification score of

27   499, up from a score of 87 when he began, due to numerous disciplinary convictions, including

28   distributing drugs in prison.  (ECF No. 50 at 8-9.)  Plaintiff's Central File contains more than

sixty Rules Violations Reports, including two in which he was found guilty for trafficking or causing controlled substances to be brought into prison for purposes of distribution.  (ECF No. 50-3, Medina Decl., ¶ 8.)

In an attached declaration, CDCR Associate Warden K. Medina states that "even if Mr. Giraldes' life status is ignored, or assuming he was given an established parole date, he would still not be eligible for family visiting under § 3177(b)(2)," which provides that "family visits shall not be permitted for inmates who are . . . guilty of narcotics distribution within a state prison."  (Medina Decl., ¶ 7.)  In 1996, plaintiff was found guilty of trafficking/possession of marijuana when his visitors, his mother and grandmother, gave another inmate narcotics to give to plaintiff.  (Id., ¶ 8; see Medina Decl., Ex. A.)  Plaintiff's mother and grandmother lost their visiting privileges as a result of this smuggling incident.  (Id.; see Medina Decl., Ex. B.)  In 1999, plaintiff was found guilty of causing controlled substances (marijuana and hydrocodone) to be brought into a state prison for distribution.  (Id., ¶ 9.)  According to the investigation, the drugs were brought into the visiting area by plaintiff's mother.  (Id.; see Medina Decl., Ex. C.)  Plaintiff's mother pled guilty and was convicted of the felony offense of bringing drugs into a prison.  (Id.; see Medina Decl., Ex. D.)  Additionally, plaintiff was convicted in the Solano County Superior Court of possession of controlled substances in prison in 2000 and 2001.  (Id., ¶ 10; see Medina Decl., Ex. E.)

In light of this record, defendants assert, plaintiff is disqualified from family visits under § 3177(b)(2) for compelling reasons of prison security and public safety.  Sgt. Shaw, the Visiting Sergeant at CSP-Sacramento, declares that there are only four operational overnight visiting units at the prison and almost always a waiting list of qualified inmates for conjugal visits.  (ECF No. 50-2, Shaw Decl., ¶ 2.)  At the hearing on the motion, defendant's counsel pointed out, per Shaw's declaration, that family overnight visits at CSP-Sacramento last three days (Friday morning until Sunday morning) in a two-bedroom apartment-like unit on prison grounds:

> To afford the inmate and his family privacy, the family visiting units have only a single window. . . . There are no video or audio monitoring devices in the units, officers cannot see into the units, there is no pedestrian traffic, or any other type of monitoring of the family visit units.  Custody staff does not enter or monitor the

> family visiting units, and the only supervision provided during the family visit is that the inmate must step out of the unit to be counted up to eight times a day. His visitors are not required to step out.
>
> As a result of the private setting and location of the family unit, inmates must demonstrate a high degree of trustworthiness to be granted this privilege. Their in-prison records must show no propensity to violate the rules, or suggest that they would engage in criminal activity during a family visit, or that they may harm their visitors.

(Shaw Decl., ¶¶ 3-4.) Given plaintiff's record of drug smuggling, drug distribution, and prison misconduct, defendant asserts, "[r]equiring CDCR to provide him with overnight visits would impose an unacceptable security risk[.]" (Medina Decl., ¶ 13.)

In reply, plaintiff argues that his drug offenses took place long ago, and currently he "is not physically capable of posing a security threat to anyone." (ECF No. 51 at 4-5.) He has had multiple surgeries, including removal of his stomach and part of his esophagus, and is on long-term pain management. (Id. at 5.) Plaintiff concedes that the state can lawfully exclude drug offenders from the family visitation program; however, he argues, the question is "whether Plaintiff's ancient drug offenses demonstrate that Defendant has a compelling interest in excluding Plaintiff *today* from spending intimate time with his wife." (Id. at 6.)

VI. Analysis

Prisoners have no constitutional right to contact visits or conjugal visits. Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002). The Supreme Court has held that a blanket prohibition on contact visits with pretrial detainees is a reasonable response to legitimate security concerns. Block v. Rutherford, 468 U.S. 576 (1984). "[T]he Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility." Id. at 589.

California prisoners previously have challenged CDCR's conjugal visit policy, but courts in this district have not looked favorably on their claims. In Shields v. Foston, et al., No. 2:11-cv-0015 JAM EFB P, 2013 WL 3456964 (E.D. Cal. July 9, 2013), a Muslim prisoner serving a sentence of life without the possibility of parole ("LWOP") challenged § 3177. The court granted

defendants' motion to dismiss for failure to state a claim and denied plaintiff's motion to amend

as futile.  Plaintiff's appeal was dismissed on procedural grounds.

As to plaintiff's First Amendment claim, the <u>Shields</u> court found:

> Any assertion that § 3177 runs afoul of that clause is defeated by
> the U .S. Supreme Court's decision in <u>Employment Division v.</u>
> <u>Smith</u>, 494 U.S. 872 (1990).  There, the Court held that generally-
> applicable laws that incidentally burden a religious practice do not
> violate the Free Exercise Clause.  494 U.S. at 878.  Because § 3177
> does not prohibit conjugal visitation solely for Muslim life inmates,
> but all life inmates regardless of religion, it does not violate the
> Free Exercise Clause.

2013 WL 3456964, *3.

As to plaintiff's RLUIPA claim, the <u>Shields</u> court found that § 3177 served a compelling

state interest in prison security by the least restrictive means, noting: "A judge of this district has

recognized California's conclusion, in promulgating § 3177, 'that inmates with no parole dates

were considered escape and security risks, such that allowing such inmates to have family visits

was not compatible with public safety.'"[2] 2013 WL 3456964, *5.  <u>Shields</u> further noted that

"[n]either the U.S. Supreme Court nor the Ninth Circuit has yet addressed whether a sincerely

held religious belief necessitating conjugal visits must be accommodated under RLUIPA."  2013

WL 3456964, *5.

In <u>Martin v. Cate</u>, No. 1:10-cv-1509 LJO GSA PC, 2014 WL 348442 (E.D. Cal. Jan. 31,

2014), a Christian prisoner's challenge to § 3177 was screened out for failure to state a claim;

plaintiff did not appeal.  As in <u>Shields</u>, the court found that § 3177 was a generally-applicable law

that incidentally burdened a religious practice and thus did not violate free exercise.  <u>Id.</u> at *1.

Turning to RLUIPA, the court noted that there was no Ninth Circuit ruling on the issue of

conjugal visits; however, the lower courts "appear, thus far, to uniformly conclude that [religious]

beliefs must give way to the need for institutional security."  <u>Id.</u> at *2 (collecting cases).  <u>See also</u>

<u>Owens v. Kernan</u>, No. 2:16-cv-0167 EFB P, 2016 WL 3361885 (E. D. Cal. June 16, 2016)

---

[2] <u>Tuvalu v. Woodford</u>, No. CIV S–04–1724 RRB KJM P, 2008 WL 619158, at 3 (E.D. Cal. Mar. 4, 2008), affirmed at 389 Fed. Appx. 735 (9th Cir. 2010).

(screening out LWOP prisoner's challenge to § 3177 for failure to state a claim, citing <u>Shields</u>).

Here, assuming <u>arguendo</u> that § 3177(b) substantially burdens plaintiff's sincerely held religious belief, RLUIPA requires the state to show that the regulation is the least restrictive means of achieving a compelling security interest, as applied to plaintiff.  On this record, the state has done so.[3]  Plaintiff's complaint challenges the categorical ban on conjugal visits for inmates who are serving life sentences but have not been given a parole date.  (Compl., ¶ 4.)  However, the record shows that even if that provision were eliminated and/or plaintiff were no longer in that category, he would still be ineligible for overnight visits under another provision of § 3177(b)(2) that concerns an individual inmate's history of prison drug activity.  In fact, plaintiff's family members were involved in smuggling narcotics to him in prison.  Putting aside any categorical ban on life prisoners, plaintiff has not shown that his personal ineligibility for private conjugal visits, in light of his history of misconduct and per prison policy, violates RLUIPA.[4]

Because plaintiff has shown neither a likelihood of success on the merits nor the prospect of irreparable harm, the court will deny plaintiff's motion for preliminary injunctive relief.

VII.  <u>Further Proceedings</u>

Defendant contends that this action should be dismissed for lack of jurisdiction, arguing that plaintiff lacks standing because the remedy he seeks – permanent injunctive relief – is unavailable under the circumstances.  (ECF No. 50 at 22-23.)  However, having reviewed the merits of plaintiff's claims on the available record evidence, the court will proceed to a merits determination on summary judgment.

Per the scheduling order, discovery is nearly complete and dispositive motions are to be

---

[3] For purposes of ruling on the motion, the court expresses no opinion on the "sincerely held religious belief" and "substantial burden" elements of the RLUIPA test, as the state has a compelling security interest in barring plaintiff from conjugal visits.

[4] Plaintiff's argument that his drug offenses took place 15 to 20 years ago, and therefore he should not be considered a security risk in 2016, is unavailing.  <u>See</u> In re Espinoza, 192 Cal. App. 4th 97, 105 (4th Dist. 2011) (§ 3177(b) ban on overnight visitation for inmates found guilty of narcotics distribution "while incarcerated in a state prison" contains no statutory time limitation for the relevance of prior disciplinary actions).  Whatever plaintiff's current physical limitations, he has shown himself to be untrustworthy and willing to violate prison rules, notably with regard to the possession and distribution of drugs.

9

1    filed no later than September 30, 2016.  (ECF No. 43.)  Neither party need resubmit materials

2    included in the preliminary injunction briefing, and parties may argue as a matter of law based on

3    the record evidence.

4        Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for preliminary

5    injunction (ECF No. 45) is denied.

6    Dated:  July 13, 2016

7                                     _____

8                                     CAROLYN K. DELANEY
                                      UNITED STATES MAGISTRATE JUDGE

13    2 / gira1780.pi

10